# EXHIBIT B

## Page 1

```
         IN THE CIRCUIT COURT
         FOR THE STATE OF TENNESSEE
       23rd JUDICIAL DISTRICT, DICKSON COUNTY

RAY FLAKE and CATHY        )
FLAKE,                     )
                           )
         Plaintiffs,       )
                           )
vs.                        )  CASE NO.
                           )  CV-1911
SALTIRE INDUSTRIAL, INC.   )
f/k/a SCOVILL, INC.;       )
SCHRADER-BRIDGEPORT        )
INTERNATIONAL, INC. f/k/a  )
SCHRADER AUTOMOTIVE,       )
INC.; ALPER HOLDINGS       )
U.S.A., INC.; TOMKINS      )
PLC; CITY OF DICKSON,      )
TENNESSEE; WILLIAM         )
ANDREWS; LEWIS EDWARD      )
KILMARX and JOHN DOE(S)    )
1-10,                      )
                           )
         Defendants.       )
```

VIDEOTAPED DEPOSITION OF:

WILLIAM F. ANDREWS

Taken on behalf of the Defendants

July 27, 2005

---

VOWELL & JENNINGS, INC.
Court Reporting Services
328 Washington Square Building
222 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

VOWELL & JENNINGS, INC.  (615) 256-1935

## Page 2

```
         IN THE CIRCUIT COURT
         FOR THE STATE OF TENNESSEE
       23rd JUDICIAL DISTRICT, DICKSON COUNTY

JON ARMSTRONG and          )
CHARLOTTE ARMSTRONG,       )
                           )
         Plaintiffs,       )
                           )
vs.                        )  CASE NO.
                           )  CV-1929
SALTIRE INDUSTRIAL, INC.   )
f/k/a SCOVILL, INC.;       )
SCHRADER-BRIDGEPORT        )
INTERNATIONAL, INC. f/k/a  )
SCHRADER AUTOMOTIVE,       )
INC.; ALPER HOLDINGS       )
U.S.A., INC.; TOMKINS      )
PLC; CITY OF DICKSON,      )
TENNESSEE; WILLIAM         )
ANDREWS; LEWIS EDWARD      )
KILMARX and JOHN DOE(S)    )
1-10,                      )
                           )
         Defendants.       )
```

DEPOSITION OF:

WILLIAM F. ANDREWS

Taken on behalf of the Defendants

July 27, 2005

---

VOWELL & JENNINGS, INC.
Court Reporting Services
328 Washington Square Building
222 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

VOWELL & JENNINGS, INC.  (615) 256-1935

## Page 3

```
         IN THE CIRCUIT COURT
         FOR THE STATE OF TENNESSEE
       23rd JUDICIAL DISTRICT, DICKSON COUNTY

DONALD and KRISTIE         )
ADKINS, et al,             )
                           )
         Plaintiffs,       )
                           )
vs.                        )  CASE NO.
                           )  CV-2022
SCHRADER-BRIDGEPORT        )
INTERNATIONAL, INC. f/k/a  )
SCHRADER AUTOMOTIVE,       )
INC., et al,               )
                           )
         Defendants.       )
```

DEPOSITION OF:

WILLIAM F. ANDREWS

Taken on behalf of the Defendants

July 27, 2005

---

VOWELL & JENNINGS, INC.
Court Reporting Services
328 Washington Square Building
222 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

VOWELL & JENNINGS, INC.  (615) 256-1935

## Page 4

APPEARANCES:

For the Plaintiffs Flake:

ALFRED DAVIDSON
Barrett Law Office
One Burton Hills Boulevard
Suite 380
Nashville, Tennessee 37215

For the Plaintiffs Armstrong:

HENRY TODD
Attorney at Law
404 East College Street
Dickson, Tennessee 37055

For the Defendant Andrews:

GLENN ROSE
KENNY BYRD
Harwell, Howard, Hyne, Gabbert & Manner
315 Deaderick Street
Suite 1800
Nashville, Tennessee 37238-1800

For the Defendant Meritor:

GEORGE H. NOLAN
Boult, Cummings, Conners & Berry
1600 Division Street
Suite 700
Nashville, Tennessee 37203

For the Defendant City of Dickson:

TERESA REALL RICKS
Farrar & Bates
211 Seventh Avenue North
Suite 420
Nashville, Tennessee 37219

COPY

VOWELL & JENNINGS, INC.  (615) 256-1935

Page 1 to 4 of 237
Case 3:07-cv-00927  Document 16-2  Filed 11/02/07  Page 2 of 3 PageID #: 463
08/24/2005 11:39:38 AM

**Page 73:**

1 not be able to remember it, but do you
2 remember whether or not the Dickson facility
3 was still operating when your employment with
4 Scovill ended in early 1985?
A.   It was closed by that time.
Q.   Okay. Do you think that the facility
7 was closed at the time the Belzberg brothers
8 contracted or bought the company?
9 A.   I think so.
10 Q.   Okay.
11 A.   I think it was closed at that time,
12 but I'm not sure. I really am not sure.
13 Q.   Okay. Were you personally involved in
14 the work and other activities required to
15 actually shut down the operations of the
16 Dickson facility?
17 A.   No. I would have been involved in the
18 final approval process, because that would
19 have to go to the Board, so numbers would
20 have been presented to me justifying the
21 shutdown and the cost of the shutdown, et
22 cetera. We would have presented all that to
23 the Board, and we would have gotten, you
24 know, an approval or no approval to shut it
25 down. And so I was involved in looking at

**Page 74:**

those numbers and what it cost and what the
2 return would be in shipping out of Brazil,
3 but I don't remember any specifics of that
4 information.
5 Q.   Okay. Did the decision to close the
6 Dickson facility have anything to do with the
7 concern that it might be causing pollution
8 there or generating pollution?
9 A.   Didn't know it had any pollution.
10 Q.   As of the time your employment ended
11 with Scovill in early 1985, had the Schrader
12 Automotive Division been sold to some third
13 party?
14 A.   No. What happened when the Belzbergs
15 bought this business is they originally -- it
16 was a hostile takeover. So first of all, I
17 tried to buy the business myself with the
18 management and we couldn't obtain the price
19 necessary to match the Belzbergs' price. So
20 then the Belzbergs had told me they were
21 buying this company to be a flagship company
22 for buying other companies in the U.S. and
23 that they would have to sell one or two
24 businesses, but that they were going to keep
25 the business intact. They didn't do that;

**Page 75:**

1 they sold everything.
2        So after they bought it, they told me
3 they wanted me to sell the two Schrader
4 businesses. They wanted to stay in the
5 consumer housing business.
6        And I was successful in selling
7 Schrader Bellows to Parker-Hannifin. I
8 worked on it for maybe 60, 90 days. That's
9 what I did during the first part of the
10 transition.
11       And then I tried to sell Schrader
12 Automotive to the Arvin Group, which was
13 owned by the Pritchkards. And the price that
14 I was offered wasn't high enough that -- the
15 Belzbergs wouldn't sell it for that price.
16 And along about that time, I left.
17       I later learned that the Belzbergs
18 bought 5 percent of Arvin's stock and
19 threatened Arvin with green mails, that if
20 they didn't buy Schrader Automotive, they'd
21 buy all of Arvin. And so Arvin wound up
22 buying Schrader Bellows.
23 Q.   And Arvin's purchase was after your
24 employment ended?
25 A.   After I had left.

**Page 76:**

1 Q.   And did you have any involvement in
2 that transaction by which Arvin purchased --
3 A.   No.
4 Q.   -- some portion of the business?
5 A.   No.
6 Q.   Okay. And just for those of U.S. who
7 might not be familiar with deals and
8 strategy, you mentioned that the Belzbergs
9 bought the company through a hostile
10 takeover. Tell U.S. what a hostile takeover
11 is.
12 A.   They advertise in the Wall Street
13 Journal that they will buy 100 percent of the
14 shares, of the outstanding shares of the
15 company, at some price that is higher than
16 the market price that it's currently being
17 traded at. And so they offered to buy these
18 shares from institutions and the public, et
19 cetera.
20       Since probably of those public
21 companies, institutions hold 50 percent of
22 the shares, institutions quickly jump on that
23 because they're interested in making as high
24 a return for their funds as they can. And so
25 within the first probably two weeks of a

VOWELL & JENNINGS, INC.   (615) 256-1935

19 of 87 sheets   Case 3:07-cv-00927   Document 16-2   Page 73 to 76 of 237   Filed 11/02/07   Page 3 of 3 PageID #: 464   08/23/2005 04:41:23 PM